UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JAMES ALLEN GORDON,

                           Petitioner,

        -against-

**MEMORANDUM & ORDER**

09 CV 4383 **(RJD)**

SUPERINTENDENT MARC L. BRADT, et al.,

                           Respondents.
------------------------------------------------------------x
DEARIE, District Judge.

      Petitioner James Allen Gordon, the first capital defendant in Queens County following the reinstatement of the death penalty in the State of New York, moves for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His case arose out of the grisly killings of three young women and brutal assaults on two others in a Queens apartment building in 1996. Following a thirteen-week trial at which he represented himself, petitioner was convicted of seven counts of first degree murder and multiple counts of attempted murder, first-degree rape, first-degree sodomy, robbery and attempted sexual abuse.[1] The jury spared petitioner the ultimate penalty,

---

[1] At the close of the case, the trial court (Justice Thomas A. Demakos) issued a written decision addressing the self-representation question. See People v. Gordon, 179 Misc. 2d 940, 940-46 (N.Y. Sup. Ct., Queens Co., Jan. 29, 1999). The court framed the issue as "whether or not a defendant has a constitutional and statutory right to proceed *pro se* at trial even when the stakes are life or death," id., 179 Misc.2d at 941, and concluded that, "[d]espite th[e] court's misgivings, a review of relevant State and Federal authority requires that this question be answered in the affirmative." Id. The court questioned Mr. Gordon extensively and found that his "decision to proceed *pro se* was unequivocal and intelligently made," and that "despite [his] lack of formal education, he was quite intelligent and fully aware of the heavy responsibilities he was undertaking." Id. at 942. The court "had no doubt that . . . Gordon, with eyes open, was aware of exactly what he was doing, what choices he was exercising and the risk that he was shouldering." Id. "[I]nasmuch as this was a protracted and complicated case involving life or death issues," the court explained, assigned counsel remained on the case in an advisory capacity. Id. The Appellate Division, Second Department, affirming petitioner's conviction and

voting instead that he be sentenced to life without parole on three of the first-degree murder counts. The court further sentenced petitioner, as a second violent felony offender, to several terms of 25 years to life consecutive to the life term.

The threshold question presented by Gordon's habeas papers, and the sole subject of this interim order, concerns the exhaustion requirement. One of the two grounds upon which Gordon seeks relief, the alleged ineffectiveness of appellate counsel, has not yet been presented to a New York State court through a motion for a writ of error coram nobis. As the New York Court of Appeals has quite clearly held, the "common-law coram nobis proceeding brought in the proper appellate court is the *only* available and appropriate procedure and forum to review a claim of ineffective assistance of appellate counsel." People v. Bachert, 69 N.Y.2d 593, 596 (1987) (emphasis added). Accord Daley v. Lee, 10-CV-6065(NGG), 2012 WL 2577472, at *7 (E.D.N.Y. July 3, 2012) ("The *exclusive* state court remedy to raise an ineffective assistance of appellate counsel claim is the coram nobis petition") (emphasis added). Therefore, "the coram nobis petition is the only way to exhaust this type of claim for habeas purposes." Id.

Fortunately for petitioner, his failure to have exhausted his appellate ineffectiveness claim is not fatal, because a coram nobis proceeding may be brought "at any time." Ikker v. Taylor, 08–CV–3301(JG), 2008 WL 5110866, at *6 (E.D.N.Y. Dec.3, 2008). This circumstance triggers inquiry into the availability of a stay of this proceeding to allow petitioner to pursue a coram nobis. See generally Rhines v. Weber, 544 U.S. 269, 276-77 (2005). As the Supreme

---

sentence, found that Gordon's "waiver of his right to counsel was unequivocal, voluntary and intelligently made," that "[t]he trial court undertook a sufficient searching inquiry . . . to be reasonably certain that the dangers and disadvantages of giving up the fundamental right to counsel were impressed upon [Gordon]," that the court "apprised [Gordon] of the risks and dangers of self-representation," and that the request to proceed *pro se* was "properly granted." People v. Gordon, 66 A.D.3d 920, 920 (2d Dep't 2009). The New York Court of Appeals denied leave to appeal. People v. Gordon, 13 N.Y.3d 907 (Dec. 30, 2009).

Court in Rhines explains, although federal district courts have the authority to reach the merits of an unexhausted claim for purposes of *denying* the writ, see 28 U.S.C. § 2254(b)(2), they also have the discretion to stay a habeas petition, to allow a petitioner to litigate the unexhausted claim in state court and then return for review of the perfected petition. Id. at 277. In order to exercise its discretion in this manner, the habeas court must be satisfied that the unexhausted claim does not yet warrant the label "plainly meritless" and that there is "good cause for the petitioner's failure to exhaust [the] claim[] first in state court." Id.

This Court is so satisfied.

On the subject of "good cause," petitioner (who has not asked for a stay) understandably argues that he did adequately alert the Appellate Division to his appellate ineffectiveness claim by his filing of a pro se brief "opposing" the brief that appellate counsel (the Legal Aid Society) prepared and filed on his behalf. The "opposition brief" asserts that Legal Aid's brief "[p]rejudice[s]" petitioner, "lack[s] merit," "misrepresents the actuality of the trial record," and "[v]iolates [petitioner's] State and Federal Constitutional rights to Due Process." The brief also complains that Legal Aid failed to raise the grounds for appeal that petitioner claims have merit. There is no authority, however, for the notion that such an "opposition" brief can substitute for coram nobis, nor could there be, inasmuch as coram nobis asks the appellate court to vacate, on the ground of the ineffective assistance of appellate counsel, its own earlier decision affirming a criminal conviction. It is axiomatic that the claim of ineffective assistance of appellate counsel is not susceptible of adjudication during the direct appeal itself.[2] Nevertheless, petitioner's

---

[2] Further, the record confirms that the Appellate Division did not treat the "opposition" brief as presenting an appellate ineffectiveness claim requiring adjudication. First, according to respondent, the appellate court docketed petitioner's brief as a motion seeking miscellaneous relief and reinstatement of permission to file a supplemental brief. Second, although the Appellate Division's decisions in criminal appeals typically include a sentence summarily disposing of a defendant's "remaining claims"—including a reference to a defendant's

3

mistaken belief that his opposition brief should suffice for exhaustion purposes satisfies the Rhines "good cause" requirement. See, e.g., Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005) (a petitioner's "reasonable confusion" about whether he has properly exhausted a claim "will ordinarily constitute 'good cause'" under Rhines).

Turning to the "merits" prong, courts have observed that neither Congress, the Supreme Court, nor the Second Circuit has announced a clear test or framework for measuring whether an unexhausted claim is "plainly meritless" within the meaning of Rhines. See, e.g., Keating v. New York, 708 F. Supp.2d 292, 299 n. 11 (E.D.N.Y. 2010) (collecting authorities). Nevertheless, as Keating explains, "[t]he various formulations bandied about in the Second Circuit's district courts have the common thread of disposing of unexhausted claims that are unquestionably meritless," whereas stays are granted on the rationale that "state courts must, as a matter of comity, be afforded the opportunity to first pass upon any habeas claim that is at least potentially meritorious." Id. (collecting authorities). The Court concludes that both threads militate in favor of a stay in this case.

As for the ineffectiveness claim itself, its dimensions are considerable, putting at issue the actions (and inactions) of two different teams of appellate attorneys over the span of the full decade between the filing of petitioner's notice of appeal on February 1, 1999 and the issuance, on October 20, 2009, of the Appellate Division's decision affirming his conviction. By way of overview, that decade is roughly divisible into chapters, including but not limited to (i) an initial period of more than two and a half years during which petitioner disagreed with Appellate Advocates' view on whether he risked re-exposure to the death penalty in the event of re-trial; (ii) next, an approximately five-year period of apparent inactivity, between the appointment of

---

supplemental pro se brief where one has been filed—the appellate decision in this case makes no reference to petitioner's pro se "opposition" brief.

4

Legal Aid as Appellate Advocates' successor, and Legal Aid's filing of the brief on petitioner's behalf; and (iii) an ensuing period of two-years, starting with the granting of petitioner's request to file a supplemental pro se brief and ending with the appellate court's denial (after granting the previous four) of petitioner's fifth application for an extension of time to file that brief. (Thereafter, oral argument and the decision proceeded expeditiously).

Against this backdrop, petitioner's ineffectiveness claim challenges the performance of both Legal Aid and Appellate Advocates. Petitioner seeks to fault Legal Aid for raising the issues it elected to raise, for the manner in which it characterized the record, and for failing to brief the issues that petitioner believes have merit. The record confirms that Legal Aid argued that the trial court erred by (i) denying defense counsel's request for a competency hearing, (ii) allowing petitioner to represent himself at trial, and (iii) denying the request to charge the jury on extreme emotional disturbance. Petitioner complains that Legal Aid should have argued, instead, that the indictment was multiplicitous, that petitioner's arrest was illegal, that the identification evidence was inadmissible, and that his confession was involuntary. With respect to Appellate Advocates, petitioner claims they *mis*gauged his risk of exposure to the death penalty if successful on appeal and re-tried and, therefore, that they are therefore responsible for the impasse that resulted in no merits brief being filed during the 32-month period that they were appellate counsel of record.[3]

Notably, the allegations underlying petitioner's appellate ineffectiveness claim overlap in part with those advanced in support of petitioner's *other* claim for relief, i.e., that the "appellate delay" itself (petitioner's words) amounts to a due process violation.

With an ineffectiveness claim of the nature just described, in a case of obvious

---

[3] The Court recites these facts in this interim order for informational purposes only and without prejudice to any future adjudication of this claim.

importance to the State of New York, concerns of comity and federalism carry especially great weight and indeed are dispositive. They, as well as common sense, counsel against adjudicating the merits of the petition until the state has had the opportunity to adjudicate the sweeping appellate ineffectiveness allegations. Because the state process for adjudicating appellate ineffectiveness is still available, it can only be in both petitioner's and the state's interest that that process be exhausted before federal review of petitioner's conviction begins.

The Court appreciates that a litigant such as petitioner who is already complaining of appellate delay may not be receptive to the news that adjudication of his habeas petition must await the outcome of additional litigation in the state appellate court. Petitioner is advised that, under the law, he retains the option of *not* returning to state court, but only if he elects to withdraw his appellate ineffectiveness claim altogether and proceeds here solely on his appellate delay claim. See Rhines, 544 U.S. at 278 ("a petitioner can always amend the petition to delete the unexhausted claims, rather than returning to state court") (internal quotation, citation and alterations omitted).[4] But if petitioner neither exhausts his appellate ineffectiveness claim nor withdraws it, the Court must dismiss the petition. See generally 28 U.S.C. § 2254(b)(1)(A) (application for writ of habeas corpus "shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State"); Caravajal v. Artus, 633 F.3d 95, 104 (2d Cir.) ("before a federal court can consider a habeas application brought by

---

[4] Petitioner is reminded that the typical appellate delay claimant seeks a conditional writ directing the state appellate court to decide his appeal, see generally Vasquez v. Reynolds, 2003 WL 1025705, *1, 58 Fed. Appx. 533, 534-35 (2d Cir. 2003) (collecting authorities), and the Appellate Division decided his appeal approximately three weeks after he commenced this habeas proceeding. While this fact does not moot his appellate delay claim, Diaz v. Henderson, 905 F.2d 652, 653 (2d Cir. 1990), petitioner does face the considerable burden of showing "actual prejudice to the appeal," Vasquez, 58 Fed. Appx. at 534, that is, "substantial prejudice to the disposition of the appeal." Elcock v. Henderson, 28 F.3d 276, 279 (2d Cir. 1994) (internal quotation and citation omitted), cert. denied, 513 U.S. 977 (1994). See also Diaz, 905 F.2d at 653 (to obtain release, re-trial or a new appeal, appellate delay claimant would have to show that "appeal would have had a different result absent the delay").

a state prisoner, the habeas applicant must exhaust all of his state remedies") (collecting authorities), cert. denied, __ U.S.__, 132 S. Ct. 265 (2011).  The stay, however, as the Supreme Court observed, is appropriate when "the petitioner's interest in [ultimately] obtaining federal review of his claims outweighs the competing interests in . . . speedy resolution of [the] federal petition[]."  Rhines, 544 U.S. at 278.

The appropriateness of a stay under Rhines to allow petitioner to exhaust the appellate ineffectiveness claim is not dependent upon the procedural status of petitioner's other claim—i.e., appellate delay—which respondent asserts is also unexhausted.  The facts of Rhines and the language of the decision might suggest that the stay-and-abeyance procedure that Rhines approves is limited to "mixed" petitions (i.e., those containing both exhausted and unexhausted claims) and thus unavailable to wholly unexhausted petitions.  See, e.g., Rasberry v Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("decline[s] to extend" Rhines "to the situation where the original habeas petition contained only unexhausted claims").  The Third and Fourth Circuits, however, have held otherwise; they read language in a post-Rhines Supreme Court decision, Pace v. DiGugliemo, 544 U.S. 408, 416 (2005), as authorizing Rhines stays even to wholly unexhausted petitions, and disagree with the Ninth Circuit's view in Rasberry precisely because it fails to account for Pace.  See Heleva v. Brooks, 581 F.3d 187, 191 (3d Cir. 2009) ("In Pace . . . the Supreme Court sanctioned the use of the stay-and-abeyance procedure in a context outside that of mixed §2254 petitions"); Hyman v. Keller, 2011 WL 3489092, *10 (4th Cir. Aug. 10, 2011) ("The [Supreme] Court has subsequently extended the Rhines rationale beyond mixed petitions," citing Pace).  Although this Court's research has not unearthed a Second Circuit ruling on the subject, the Court agrees with the Third and Fourth Circuits on this narrow point.  Thus, for purposes of this interim order, respondent's assertion that petitioner has not exhausted

his appellate delay claim does not render an otherwise appropriate Rhines stay unavailable.

In any event, there is authority in this and other Circuits for excusing the exhaustion requirement with respect to claims of appellate delay. See, e.g., Vazquez v. Bennett, 00-CV-3070, 2002 WL 619282, *1 (S.D.N.Y. Apr. 17, 2002) (Hellerstein, J.) ("claims of appellate delay need not be exhausted in the state courts before habeas review may be sought); Williams v. Hoke, 92-CV-2650, 1993 WL 37300, *2 (E.D.N.Y. Feb. 5, 1993) ("As a threshold matter, it should be noted that the usual requirement of exhaustion of state remedies is relaxed when the habeas petitioner claims an unconstitutional delay in the appellate process"), aff'd, 999 F.2d 537 (2d Cir. 1993); Harris v. Champion, 938 F.2d 1062, 1067 (10th Cir. 1991). To be sure, some of petitioner's communications to the Appellate Division, including his requests for additional time to file his pro se supplemental brief, may be read as having alerted the appellate court to petitioner's displeasure with how long his appeal had been pending (even as he simultaneously asked for additional time), but in light of the cited authorities, the Court need not resolve this exhaustion question at this time.[5]

## CONCLUSION

The circumstances are appropriate for the exercise of the Court's discretion in favor of staying this proceeding to allow petitioner to exhaust his ineffective assistance of appellate counsel claim through a coram nobis proceeding in the Appellate Division, Second Department. Petitioner is advised, however, that he retains the option of *not* returning to state court, but only if he elects to withdraw his appellate ineffectiveness claim altogether and proceeds to seek

---

[5] At the same time, the rationale for waiving the exhaustion requirement because of appellate delay does not extend to petitioner's appellate ineffectiveness claim. The chronology of petitioner's decade in the Appellate Division, as outlined earlier, reveals a sui generis set of circumstances that, even assuming they could suggest "delay" attributable to the state, are not indicative of a systemic shortcoming likely to impair a future coram nobis application.

habeas relief solely on the basis of his appellate delay claim. It is ordered, therefore, that petitioner advise the Court, in writing and within thirty days of his receipt of this Order, of his intentions. He shall state plainly either (a) that he intends to pursue a coram nobis in the Appellate Division, in which case this habeas proceeding will be stayed pending a final disposition on the coram nobis, or (b) that he wishes to amend his petition to delete the appellate ineffectiveness claim. It is imperative that the petitioner file with the Court a timely statement of his intentions: if he neither exhausts his appellate ineffectiveness claim nor withdraws it, the Court must dismiss the petition.

It is further ordered that, in the event petitioner elects option (a), he must file his coram nobis papers with the Appellate Division within 90 days of the letter notifying this Court of his intent to do so, i.e., in no event later than 120 days of his receipt of this order.

Petitioner's request for the appointment of counsel is denied at this time without prejudice to a renewed application. See 18 U.S.C. §3006A (authorizes appoint of counsel at any stage of the case "if the interests of justice so require").

This case is provisionally stayed pending further communication from petitioner.


SO ORDERED.

Dated: Brooklyn, New York
       September 21, 2012

                                    /s/ Judge Raymond J. Dearie
                                    _____
                                    RAYMOND J. DEARIE
                                    United States District Judge